UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| NICHOLAS A. GLADU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00384-JAW |
| | ) | |
| CORRECT CARE SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AFFIRMING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

A prisoner in Maine custody brought suit challenging the decisions of correctional staff and medical providers concerning his bilateral hip pain. The Court affirms the Magistrate Judge's recommended decision and grants summary judgment in favor of the defendants.

**I.    BACKGROUND**

On September 23, 2015, Nicholas A. Gladu filed a complaint with this Court against Correct Care Solutions and a number of individual defendants, alleging that while confined in the Maine State Prison and Maine Correctional Center, he did not receive proper medical treatment for bilateral hip pain and that the Defendants retaliated against him for filing grievances within the prison system. *Verified Compl. for Damages and Inj. Relief* (ECF No. 1). On December 21, 2015, Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., and Wendy Riebe (collectively CCS) answered the Complaint, denying its essential allegations and

raising affirmative defenses. *Answer, Defenses and Affirmative Defenses of Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, M.D. and Wendy Riebe, HSA to Pl.'s Verified Compl.* (ECF No. 61).

On December 5, 2016, Mr. Gladu filed an amended complaint in which he added Susan Carr and the Maine Department of Corrections as Defendants (collectively DOC), alleging that the Defendants violated the Rehabilitation Act, Title III of the Americans with Disabilities Act, and analogous claims under the Maine Human Rights Act. *First Am. Compl.* (ECF No. 251). On January 3, 2017, DOC filed a motion for summary judgment together with a statement of material facts in support of the motion. *Mot. for Summ. J.* (ECF No. 261); *Statement of Material Facts* (ECF No. 262) (*DOC Mot.*). On January 4, 2017, the CCS moved for summary judgment. *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O. and Wendy Riebe's Mot. for Summ. J.* (ECF No. 266) (*CCS Mot.*). On March 29, 2017, Mr. Gladu filed responses to the motions for summary judgment, *Pl.'s Br. in Resp. to Defs.' Mots. for Summ. J.* (ECF No. 341) (*Gladu Opp'n*), and a statement of disputed factual issues. *Pl.'s Statement of Disputed Factual Issues* (ECF No. 342) (PRDSMF). On April 7, DOC replied. *Reply to Opp'n to Mot. for Summ. J.* (ECF No. 353) (*DOC Reply*). On April 12, 2017, CCS replied and filed a reply to Mr. Gladu's statement of facts. *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., and Wendy Riebe's Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 358) (*CCS Reply*); *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O.*

*and Wendy Riebe's Consolidated Statement of Material Facts* (ECF No. 357) (DRPSMF).

On December 18, 2017, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant CCS's and DOC's motions for summary judgment and he granted in part and denied in part a number of then pending motions. *Recommended Decision of Defs.' Mots. for Summ. J. and Order on Pl.'s Record-Related Mots.* (ECF No. 512) (*Recommended Decision*). On January 2, 2018, Mr. Gladu objected to the recommended decision. *Pl.'s Objection to Recommended Decision* (ECF No. 520) (*Gladu Obj.*). On January 5, 2018, Mr. Gladu filed a notice to the effect that he was objecting to the Magistrate Judge's recommended decision "in whole, even though Plaintiff only responded to specific portions." *Additional Attach.* (ECF No. 521). On January 16, 2018, CCS responded to Mr. Gladu's objection. *Defs.' Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., and Wendy Riebe's Resp. to Pl.'s Obj. to Report and Recommended Decision* (ECF No. 525) (*CCS Resp. to Gladu Obj.*). DOC did not respond to Mr. Gladu's objection to the recommended decision.

## II. THE PARTIES' POSITIONS

### A. CCS's Motion for Summary Judgment

CCS framed its motion for summary judgment as testing whether an inmate has the constitutional right to direct his own care against the professional judgment of his medical providers. *CCS Mot.* at 1-20. Despite the fact that Mr. Gladu believes he has a serious medical condition, CCS maintains that he does not have the

constitutional right to control his own medical treatment and that CCS is entitled to summary judgment. *Id.*

### B. DOC's Motion for Summary Judgment

As DOC sees it, the focus of Mr. Gladu's complaint against DOC is that it failed and refused to issue him a second mattress to alleviate pain in both hips. *DOC Mot.* at 1-5. DOC contends that it has acted in accordance with its policies in issuing Mr. Gladu one mattress and in following the advice from its medical providers in denying Mr. Gladu a second one. *Id.*

### C. Nicholas Gladu's Opposition

Nicholas Gladu opposes the motions for summary judgment. *Gladu Opp'n* at 1-29. Mr. Gladu states that he was examined by an orthopedic surgeon and was thought to suffer from "possible bilateral trochanteric bursitis with rule out differential diagnosis sought for osteonecrosis by undergoing a recommended MRI." *Id.* at 2. However, Mr. Gladu says that the recommended MRI was denied by the Defendants and the "differential diagnosis was never ruled out." *Id.* Mr. Gladu says that his "pain and systemic symptoms have persistently worsened and he has not received adequate medical treatment." *Id.*

## III. THE RECOMMENDED DECISION

The Magistrate Judge framed the issue as follows:

> Plaintiff Nicholas Gladu alleges that Defendants have acted with deliberate indifference to his serious medical needs, discriminated against him on the basis of disability, retaliated against him for engaging in conduct protected under the First Amendment, and breached duties owed to him under Maine law.

*Recommended Decision* at 1.

Regarding CCS's motion for summary judgment, the Magistrate Judge set forth the undisputed material facts. *Id.* at 4-15. Turning to DOC's motion for summary judgment, the Magistrate Judge then set forth the undisputed facts in that motion. *Id.* at 15-16. The Magistrate Judge also reviewed Mr. Gladu's statements. *Id.* at 16-18.

The Magistrate Judge then turned to the legal standards to make out a case for a deliberate indifference claim under § 1983. *Id.* at 20-22. Applying the law to the undisputed facts, the Magistrate Judge concluded that "the record fails to reveal an objectively serious, undiagnosed medical condition that poses a serious risk of harm to Plaintiff's health." *Id.* at 22. The Magistrate Judge drew this conclusion despite Mr. Gladu's "concerns that he might suffer from a number of serious, potentially life-threatening diseases that have not been diagnosed." *Id.* The Magistrate Judge wrote that the "record lacks any admissible evidence that would support such a finding." *Id.* The Magistrate Judge also rejected Mr. Gladu's claims about his need for an MRI and a second mattress, noting that the law does not consider a medical decision not to order a diagnostic test cruel and unusual punishment and that the same rule applies to the second mattress. *Id.* at 22-23.

The Magistrate Judge then addressed Mr. Gladu's disability discrimination claims. *Id.* at 23-24. The Magistrate Judge concluded that Mr. Gladu's complaints about "the quality of the treatment do not support a disability discrimination claim." *Id.* at 24.

Under the retaliation rubric, the Magistrate Judge analyzed Mr. Gladu's claim for a second mattress. *Id.* at 25-26. Mr. Gladu claimed that the refusal to issue a second mattress was based on his grievance activity and his filing a complaint with the medical board. *Id.* at 25. After reviewing the record, the Magistrate Judge concluded that it lacked "any evidence that would support the conclusion that the refusal to provide a double mattress was retaliatory in any way." *Id.* In addition to concluding that the retaliation claims against Dr. Clinton were unfounded, the Magistrate Judge determined that the retaliation claims against Nurse Riebe were "frivolous." *Id.* at 25-26.

The Magistrate Judge next analyzed Mr. Gladu's malpractice and breach of contract claims against CCS only. *Id.* at 27-28. The Magistrate Judge determined that Mr. Gladu's malpractice and breach of contract claims required expert testimony and that Mr. Gladu had failed to supply any expert testimony to sustain his claim. *Id.* at 28. The Magistrate Judge concluded that for that reason, the malpractice and breach of contract claims failed. *Id.*

Finally, the Magistrate Judge turned to the second mattress claim against the DOC. *Id.* at 28-29. The Magistrate Judge quickly disposed of that claim because the DOC relied on medical advice in denying the second mattress and therefore, Mr. Gladu could not demonstrate deliberate indifference. *Id.* at 29.

## IV. THE OBJECTION AND RESPONSE

### A. Nicholas Gladu's Objection

#### 1. The Magistrate Judge's CCS Disability Ruling

Although Mr. Gladu objects to the Magistrate Judge's entire decision, in his filed objection, Mr. Gladu expressly objected to the Magistrate Judge's finding that he does not suffer from a serious medical condition. *Gladu Obj.* at 2. Mr. Gladu states that he "has provided numerous declarations from himself and disinterested prisoners and put forth several radiology reports and recommendations of specialists." *Id.* at 2. He says that he "suffers from chronic and often severe hip and back pain." *Id.* He quotes a Seventh Circuit case, *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2005), which he contends stands for the principle that a prisoner may proceed with a § 1983 action based on subjective complaints alone. *Id.* He also points to radiology reports that he argues demonstrate that he suffers from "an objectively serious medical condition." *Id.* at 2. He complains that the Magistrate Judge "made no mention of[ ] 'moderate degenerative changes of the spine" observed on x-ray. *Id.* In addition, Mr. Gladu alludes to another x-ray report, which he maintains CCS had denied the existence of, and charges that CCS has made a "material misrepresentation" thereby barring summary judgment. *Id.* at 2-3. Mr. Gladu also objects to the failure of the Magistrate Judge to mention his claim that CCS denied and delayed access to medical treatment. *Id.* Mr. Gladu accuses the Magistrate Judge of ignoring his sworn affidavits and favoring the sworn affidavits of CCS personnel and of considering inadmissible hearsay. *Id.* at 4. Mr. Gladu points out that he has sought to be examined by an independent medical examiner and this request has been denied. *Id.* at 5. Quoting *Spann v. Roper*, 453 F.3d 1007 (8th Cir.

7

2006), Mr. Gladu characterizes the absence of an independent medical examiner as "incongruous." *Id.*

### 2. The Magistrate Judge's DOC Ruling

Mr. Gladu also objects to the Magistrate Judge's DOC ruling. *Id.* at 5-6. He contends that his "chronic and often severe back and hip pain routinely interfere significantly with many major life activities." *Id.* at 5. Mr. Gladu objects to the Magistrate Judge's reliance on the "Plaintiff's arguments," rather than the entire record. *Id.*

### 3. The Magistrate Judge's CCS Retaliation Ruling

Regarding the Magistrate Judge's recommended decision on the retaliation claim, Mr. Gladu objects on the ground that the Magistrate Judge relied "entirely on hearsay evidence which would not be admissible at trial in the analysis of Plaintiff's claim of retaliation with respect to a double mattress." *Id.* at 6. He claims CCS provided affidavits of individuals without any personal knowledge. *Id.*

Regarding his retaliation claim against Wendy Riebe, Mr. Gladu objects on the ground that the Magistrate Judge erroneously concluded that he was not subject to any materially adverse consequences from the Riebe write-up. *Id.* In fact, he contends that he was "sanctioned with a level loss, which resulted in an extended period of restrictions on earned privileges and personal property." *Id.*

### 4. The Magistrate Judge's Malpractice and Breach of Contract Ruling

Mr. Gladu objects to the Magistrate Judge's malpractice and breach of contract ruling on the ground that he attempted to introduce medical treatises to establish the current standard of care, but the Magistrate Judge denied that request. *Id.* He also notes that he requested an independent medical examiner "on multiple occasions", but the Magistrate Judge denied the requests. *Id.* at 7.

### 5. The Magistrate Judge's DOC Ruling

Mr. Gladu maintains his objection to the recommendation to grant summary judgment to the DOC because he argues that the record "does support claims for deliberate indifference and disability discrimination." *Id.* at 7. He contends that the DOC received a recommendation from an expert and "failed to heed any of those specialist recommendations." *Id.* at 8.

### B. CCS Response to Nicholas Gladu's Objections

First, CCS asserts that Mr. Gladu has waived his right to object to those portions of the recommended decision to which he did not object. *CCS Resp. to Gladu Obj.* at 2.

Next, CCS turns to Mr. Gladu's Eighth Amendment claim and recites the deliberate indifference standard. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1994)). CCS then contends that the Magistrate Judge properly found that Mr. Gladu had failed to allege facts sufficient to meet this standard. *Id.* at 3-5. CCS points out that the Magistrate Judge discussed Mr. Gladu's contention that he suffers from Cushing Syndrome and that he properly determined that such a diagnosis was the subject of medical opinion and is not a fact not subject to reasonable dispute under

9

Federal Rule of Evidence 201. *Id.* at 6, 19-20. CCS also contends that although Mr. Gladu suffers from bilateral trochanteric bursitis, he is able to function well despite this condition. *Id.* at 6. CCS observes that even though Mr. Gladu maintains that his x-rays show an objectively serious degenerative spinal condition, he "has presented no expert opinion to support this contention." *Id.* CCS also rejects Mr. Gladu's argument that CCS has delayed and denied treatment. *Id.* at 7.

CCS disputes Mr. Gladu's contention that the Magistrate Judge relied on hearsay evidence to support his decision. *Id.* at 9. Instead, CCS argues, the evidence, such as Dr. Clinton's understanding of the sleep log, is properly considered not for the truth of the matter, but for Dr. Clinton's explanation for the basis of his diagnosis. *Id.* at 9. CCS rejects Mr. Gladu's complaints about the rejection of his requests for an independent medical examination on the ground that the Court "does not have an obligation to provide a medical expert for the Plaintiff." *Id.* Even if Mr. Gladu does suffer from a serious medical condition, CCS argues that it has been conscientious and consistent in its treatment of Mr. Gladu, and therefore he has failed to demonstrate that CCS has been deliberately indifferent to his care. *Id.* at 9-10.

Regarding his disability claim against CCS, CCS says that a disagreement over how to treat a disabling medical condition does not constitute discrimination based on that disability. *Id.* at 11 (citing *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006); *Flood v. Me. Dep't of Corr.*, No. 1:11-cv-270, 2012 U.S. Dist. LEXIS 158649, at 85-86 (D. Me. Aug. 24, 2012)). CCS also observes that it argued that its provision of medical care to inmates at the Maine Department of Corrections is not a

public accommodation within the meaning of the ADA because state corrections facilities are not open to members of the general public. *Id.* at 11-12.

Turning to the Rehabilitation Act, CCS argues that the Act does not apply to it because it is not a recipient of federal funding. *Id.* at 12-13.

Regarding the retaliation claims against Dr. Stockwell and Dr. Clinton, CCS notes that Mr. Gladu alleges that the doctors retaliated against him by refusing to authorize a second mattress because he filed a Board of Medicine complaint against them, but that the Magistrate Judge concluded there was no evidence to support Mr. Gladu's allegation. *Id.* at 13-14. Mr. Gladu's main objection was that in his view, the Magistrate Judge considered hearsay evidence in arriving at this conclusion, but as CCS observes, there is an exception to the rules against hearsay evidence if the statements were made for the purpose of medical diagnosis or treatment. *Id.* at 14-15 (citing FED. R. EVID. 803(4)).

CCS then turns to Mr. Gladu's objection to the Magistrate Judge's conclusion as regards his retaliation claim against Wendy Riebe. *Id.* at 15. Even though CCS agrees that Mr. Gladu's filing of a grievance can be protected activity, CCS contends that Mr. Gladu produced no evidence that his particular grievance was protected activity or that Nurse Riebe was substantially motivated by his grievance in denying his claim. *Id.* at 16-17.

Regarding the medical malpractice claim, CCS agreed with the Magistrate Judge that Mr. Gladu was required to produce some expert evidence that it deviated from the proper standard of care and its failure produced an injury. *Id.* at 17-18.

## V. DISCUSSION

Under 28 U.S.C. § 636(b)(1)(C), a district judge must perform a de novo review of "those portions of the report or specified proposed findings or recommendation to which objection has been made." *See* FED. R. CIV. P. 72(b)(3). The Court has reviewed the Magistrate Judge's recommended decision, Mr. Gladu's objections, CCS's response, and the entire record de novo. For the reasons set forth in the Magistrate Judge's recommended decision and further addressed in this Order, the Court affirms the recommended decision and grants summary judgment in favor of CCS and DOC and against Nicholas Gladu. The Court addresses some of Mr. Gladu's specific legal objections.

### A. *Hayes v. Snyder*

Mr. Gladu cites a Seventh Circuit case, *Hayes v. Snyder*, for the proposition that subjective complaints from a prisoner are alone sufficient to state a claim under the Eighth Amendment for cruel and unusual treatment. *Gladu Obj.* at 2. First, the Seventh Circuit concluded in *Hayes*, that "non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care. . . ." *Hayes*, 546 F.3d at 527; *see Grant v. Me. Dep't of Corr.*, No. 1:11-cv-00176-JAW, 2011 U.S. Dist. LEXIS 133395, at *9 (D. Me. Nov. 16, 2011), *aff'd* 2011 U.S. Dist. LEXIS 148452 (Dec. 27, 2011). The only exception is if the nonmedical personnel have "reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner." *Cashner v. Widup*, No. 17-1079, 2017 U.S. App. LEXIS 24191, at *11-12 (7th Cir. Nov. 30, 2017) (quoting *Hayes*, 546 F.3d at 527). As there is no evidence in this record that the nonmedical personnel knew or had reason to believe that Mr. Gladu was being mistreated or not treated at all, the *Hayes* case reinforces the Magistrate Judge's conclusion that the DOC personnel properly relied upon medical personnel in dealing with Mr. Gladu's complaints and DOC is entitled to summary judgment. *See Recommended Decision* at 28-29.

Mr. Gladu is correct that the Seventh Circuit concluded on the facts of *Hayes* that the inmate's subjective complaints were sufficient to allow him to proceed to trial. *Hayes*, 546 F.3d at 518. However, in *Hayes*, the inmate suffered from a condition called Peyronie's disease that the Seventh Circuit described as "a connective tissue disorder involving the growth of fibrous scar tissue in the soft tissue of the penis. The hardened scar tissue prevents the normal tissue from moving where it otherwise would in a healthy organ, and this causes an abnormal (and often painful) curvature of the penis." *Id.* at 521. The inmate in *Hayes* complained that his testicles swelled abnormally and he found it extremely painful just to urinate. *Id.* at 519. Unlike Mr. Gladu's case, there was no question as to the inmate's ultimate diagnosis, its severity, and the need for a referral to a urologist. *Id.* The *Hayes* Court concluded that an objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* at 522.

Here, the facts are markedly different. In Mr. Gladu's case, Dr. Clinton and Dr. Stockwell have repeatedly seen Mr. Gladu and have arrived at a series of diagnoses for his complaints, namely bilateral trochanteric bursitis in his hips, folliculitis on his arms, and dry and itchy feet (occasionally athlete's foot). *Recommended Decision* at 7. They have prescribed a range of treatment, including a trial of pain relievers, exercises, prolotherapy injections, tropical cream, and special medical shoes as well as encouraging Mr. Gladu to participate in yoga. *Id.* at 6. Dr. Clinton also ordered a sleep log to be kept on Mr. Gladu to determine the extent to which his inability to sleep could be corroborated. *Id.* at 8.

Unlike in *Hayes*, CCS did refer Mr. Gladu for an orthopaedic consultation to determine whether he would be a candidate for iliotibial band surgery. *Id.* Significantly, Dr. Wayne Piers, the orthopaedic surgeon, concurred with the diagnosis of trochanteric bursitis and decided that no surgery was warranted. *Id.* Dr. Piers recommended physical therapy, a double mattress, and an egg crate mattress, and suggested that an MRI might be warranted in the future. *Id.* However, when Dr. Clinton talked to Dr. Piers, the orthopaedic surgeon agreed that neither a double mattress nor an egg crate mattress was medically necessary to treat Mr. Gladu's condition. *Id.* at 9.

In short, Mr. Gladu presents a case where the doctors, including the specialist, agree on his primary diagnosis, that is, bilateral trochanteric bursitis, and agree generally on the proper treatment. For his own reasons, Mr. Gladu simply disagrees with the medical professionals and worries that he has medical conditions no medical

14

professional has diagnosed. Although he is focused on his perceived need for an MRI scan, there is no evidence in this record that Dr. Piers actually ordered an MRI scan, only that Dr. Piers suggested an MRI might be appropriate at some date in the future. In these circumstances, the evidence establishes that, unlike *Hayes*, the CCS medical professionals have been attentive to Mr. Gladu, have arrived at a diagnosis that has been confirmed by an outside specialist, and have generally agreed on the proper treatment. Mr. Gladu has failed on this record to demonstrate deliberate indifference on the part of CCS.

### B. *Spann v. Roper*

Mr. Gladu quotes the Eighth Circuit Court of Appeals in *Spann v. Roper* for the observation that it found "incongruous" that a trial court denied a motion for an expert witness and then granted summary judgment on the ground that the inmate had failed to prove causation. *Gladu Obj.* at 5 (quoting *Spann*, 453 F.3d at 1009). Again, however, *Spann* is very different on its facts. In *Spann*, a prison nurse mistakenly gave an inmate seven to ten psychotropic pills prescribed for a different prisoner, and despite the prisoner's objection, ordered him to take them. 453 F.3d at 1008. When she discovered her mistake, the nurse failed to alert anyone or obtain medical treatment for the inmate. *Id.* The inmate collapsed in his cell and, despite pushing the emergency button, laid unconscious on his cell floor for three hours. *Id.* The inmate had a series of symptoms, like cold sweats, severe headache, vision problems and shaking, following the incident. *Id.*

15

The *Spann* trial court granted summary judgment in part on the ground that the inmate failed to demonstrate a causal relationship between the three-hour delay while he was unconscious on the cell floor and his later symptoms. *Id.* The Eighth Circuit found it incongruous that the trial court denied the motion for an expert witness and granted summary judgment in part on the ground that the inmate had failed to produce an expert to testify on causation. *Id.* at 1009. It is correct that there is a facial similarity between *Spann* and this case in that the trial court has denied the inmate a request for an independent expert and then used the absence of an expert to rule against the inmate. But the facial similarity disappears upon examination.

Here, three physicians have examined Mr. Gladu, and each agrees with the other as to the correct diagnosis and each disagrees with him. What Mr. Gladu is really objecting to is the Magistrate Judge's repeated decisions not to order an independent medical examination. *See Orders* (ECF Nos. 414, 364, 309, 218, 147). As the Magistrate Judge explained in his July 8, 2016 order, appointment of an expert in the context of in forma pauperis litigation is "the exception rather than the rule" and results in "considerable expense that would otherwise be imposed on governmental defendants due to the volume of such cases." *Order on Pending Mots.* at 5 (ECF No. 147). The Magistrate Judge found no "extraordinary or compelling circumstances" justifying an order under Federal Rule of Evidence 706. *Id.* at 5-6. But unlike *Spann*, where the nurse had been clearly negligent and the causal link between her negligence and his injuries appeared obvious, the only basis for ordering

16

an independent medical evaluation of Mr. Gladu would have to be to suppose that Mr. Gladu is correct in his assessment of his own medical condition, even though the three doctors who have examined him have come to a different conclusion. *Spann* does not apply to the facts in this case.

### C. Federal Rule of Evidence 803(4)

Regarding Mr. Gladu's objection to the Magistrate Judge's consideration of hearsay evidence, the Defendants are correct that Federal Rule of Evidence 803(4) allows a medical expert to testify about statements "made for—and is reasonably pertinent to—medical diagnosis or treatment," FED. R. EVID. 803(4)(A), and "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.* 803(4)(B); *see Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298 (1st Cir. 2005) ("There is no requirement, either in the text of the Rule, or the case law, that the speaker be the patient himself"); *Danaipour v. McLarey*, 386 F.3d 289, 296-98 (1st Cir. 2004) ("The 803(4)exception does not require that the speaker be the patient or that the listener be the doctor . . . the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability").

Furthermore, many of the statements about the sleep log are not hearsay at all, because they do not contain an out of court assertion, or are offered for a non-hearsay purpose. It is only the results or contents of the sleep log that implicate the hearsay prohibition. In contrast to the results or contents, it is not hearsay for Dr. Clinton is to describe his own efforts to have MDOC create a sleep log, and that evidence of Dr. Clinton's efforts is relevant to refute Mr. Gladu's charges of deliberate

17

indifference and medical malpractice. Similarly, even if the results of Mr. Gladu's sleep log were not admissible under the medical treatment exception, the results are still admissible for non-hearsay purposes like explaining the effect on the reader, in this case Dr. Clinton. The evidence about the sleep log content is relevant predominantly for non-hearsay purposes because it explains Dr. Clinton's reaction and further medical decisions afterward, rather than for the hearsay purpose of the truth of Mr. Gladu's actual sleep patterns.

In short, most of the evidence about the sleep log and the purposes for which that evidence was introduced does not implicate the hearsay prohibition at all, and the portion that does qualify as hearsay falls within an exception.

### D. Summary

The Court has selected three legal points among Mr. Gladu's numerous objections to discuss in detail. The remaining objections do not merit discussion. The record here reflects that CCS personnel have been conscientious and appropriate in their care and treatment of Mr. Gladu and have been anything but deliberately indifferent. The decisions of neither the legal nor medical professions can be driven by someone convinced he is right against all evidence to the contrary.

## VI. CONCLUSION

Having performed a de novo review, the Court AFFIRMS the Magistrate Judge's recommended decision (ECF No. 512) and OVERRULES Nicholas A. Gladu's objections (ECF No. 520) for the reasons set forth in the Magistrate Judge's recommended decision and in this order. The Court GRANTS Defendants Maine

Department of Corrections and Susan Carr's Motion for Summary Judgment (ECF No. 261). The Court GRANTS Defendants Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., and Wendy Riebe's Motion for Summary Judgment (ECF No. 266). The Court ORDERS judgment to issue in favor of the Defendants and against the Plaintiff.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2018