UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| NICHOLAS A. GLADU, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:15-cv-00384-JAW |
| | ) | |
| CORRECT CARE SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO VACATE JUDGMENT**

A prisoner in Maine custody seeks to vacate a judgment against him more than a year after it entered based on newly discovered information related to his medical diagnoses. Because he did not file his motion within one year of judgment entering and because he has not demonstrated extraordinary circumstances entitling him to relief under the catch-all provision of Federal Rule of Civil Procedure 60(b)(6), the Court denies his motion.

**I.  BACKGROUND**

On July 27, 2016, Nicholas Gladu filed an amended complaint against Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., Wendy Riebe, R.N., the Maine Department of Corrections, and Susan Carr. *First Am. Compl.* (ECF No. 251).[1] On January 3, 2017, the Maine Department of Corrections and Susan Carr moved for

---

[1] Though the docket reflects that this Amended Complaint was not docketed until December 5, 2016, the prison mailbox rule controls the date of filing of incarcerated individuals' filings under 42 U.S.C. § 1983. *See Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002) (holding "that the mailbox rule shall govern the determination of when a prisoner's § 1983 filing has been completed"). Mr. Gladu's Amended Complaint includes a declaration from Mr. Gladu that he placed his Amended Complaint in the prison mail system on July 27, 2016. *First Am. Compl.*, Attach. 1 at 34.

summary judgment. *Mot. for Summ. J.* (ECF No. 261). On January 4, 2017, Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O., and Wendy Riebe, R.N. (collectively CCS) moved for summary judgment. *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O. and Wendy Riebe's Mot. for Summ. J.* (ECF No. 266). Mr. Gladu responded to both motions for summary judgment on March 22, 2017. *Pl.'s Br. in Resp. to Defs.' Mots. For Summ. J.* (ECF No. 341).[2] On December 18, 2017, the Magistrate Judge issued a report and recommended decision recommending a grant of summary judgment for all Defendants and against Mr. Gladu. *Recommended Decision on Defs.' Mots. for Summ. J. and Order on Pl.'s Record-Related Mots.* (ECF No. 512).

On December 28, 2017, Mr. Gladu objected to the Magistrate Judge's Recommended Decision. *Pl.'s Obj. to Report and Recommended Decision* (ECF No. 520). On January 16, 2018, CCS responded to Mr. Gladu's objection. *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O. and Wendy Riebe's Resp. to Pl.'s Obj. to Report and Recommended Decision* (ECF No. 525). On February 14, 2018, this Court affirmed the recommended decision of the Magistrate Judge and issued a judgment granting both motions for summary judgment. *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 541) (*Order*). On February 15, 2018, the Clerk of Court entered judgment in favor of all the Defendants and against the Plaintiff's Complaint. *J.* (ECF No. 542). On February 18, 2018, Mr.

---

[2] Mr. Gladu's response does not include a declaration regarding when it was mailed. However, Mr. Gladu signed his response on March 22, 2017, *id.* at 29, and the Court adopts that date as the date of filing. For purposes of this order, the Court applies this logic to further filings by Mr. Gladu that do not include declarations regarding when he placed them in the prison mailing system.

2

Gladu appealed the judgment to the Court of Appeals for the First Circuit, *Notice of Appeal* (ECF No. 545), and on February 23, 2018, he filed a second notice of appeal to the First Circuit. *Notice of Appeal* (ECF No. 549).

On August 9, 2019, Mr. Gladu filed a motion to vacate judgment in this Court. *Mot. to Vacate J.* (ECF No. 563) (*Pl.'s Mot.*). On August 30, 2019, the First Circuit issued its judgment, affirming the Court's grant of summary judgment to the Defendants. *J. of Ct. of Appeals for the First Circuit* (ECF No. 566). On September 20, 2019, the First Circuit issued its mandate, returning jurisdiction to this Court. *Mandate* (ECF No. 568); *Mandate* (ECF No. 569). On November 5, 2019, CCS responded to Mr. Gladu's motion to vacate judgment. *Defs. Correct Care Solutions, Robert Clinton, M.D., George Stockwell, D.O. and Wendy Riebe's Obj. to Pl.'s Mot. to Vacate J.* (ECF No. 571) (*Defs.' Obj.*).

## II.  PARTIES' POSITIONS

### A.  Nicholas Gladu's Motion to Vacate Judgment

Mr. Gladu moves the Court to vacate judgment against him under Federal Rule of Civil Procedure 60(b)(2), (3), and (6). *Pl.'s Mot.* at 1. Mr. Gladu states that "[t]hroughout the course of litigation in [this] matter, [he] sought various diagnostic medical testing and consultation with medical specialists, for what [he] contended to be a[n] undiagnosed underlying serious medical condition," though CCS argued such testing was unnecessary. *Id.* He states that "[s]hortly after final judgment in this matter, the Maine Board of Licensure in Medicine began an inquest into [his] medical care and treatment by Defendant Dr. Clinton" which made clear that some of the

3

diagnostic tests he sought "were in fact actually medically necessary." *Id*. Because of this, "Dr. Clinton performed follow-up testing of [his] phosphorus and Vitamin D 25OH levels and made subsequent referrals to disease specialists based in part on those results." *Id*. This "follow-up revealed continued hyperphosphatemia." *Id*. at 2. Mr. Gladu notes that throughout this litigation, his "other lab results showed recurrent hematuria and proteinuria" which "herald chronic kidney disease collectively." *Id*.

Mr. Gladu states that "[o]n August 28, 2018, Defendant Dr. Clinton referred [him] to urology for consultation of recurrent hematuria." *Id*. On "October 31, 2018, [Mr. Gladu] was seen by a urologist who[] was confused why [he] had been sent to urology at all and immediately recommended that [he] be evaluated by a nephrologist." *Id*. Dr. Clinton approved Mr. Gladu's referral to a nephrologist days later, and on April 12, 2019, Mr. Gladu "was finally sent to nephrology for consultation." *Id*. Mr. Gladu insinuates that this delay was the result of an effort to prevent him from presenting "new evidence to the Court for a motion such as this." *Id*.

Mr. Gladu states that on June 19, 2019, he underwent testing requested by his nephrologist, and on July 24, 2019, he was informed that his nephrologist had "diagnosed [him] with chronic kidney disease and intended to continue workup of [his] fluid imbalance issues (hypernatremia and hyper[osmolar]ity)." *Id*. Mr. Gladu asserts that "Chronic Kidney Disease is unquestionably a serious medical need as contemplated under the Eighth Amendment," as it can cause "bone miner[]alization

4

disorders and/or secondary hyperparathyroidism[, b]oth of which cause protracted bone pain similar to those complaints by [Mr. Gladu] since the onset of this case." *Id.* at 3.

Mr. Gladu alleges "[u]pon information and belief" that CCS "intentionally delayed [his] nephrology consultation until after the 1 year deadline for [him] to introduce new evidence in this matter, as [it] knew or reasonably should have known, that [his] const[e]llation of symptoms and labwork abnormalities would result in a diagnosis of chronic kidney disease and other serious disorders . . .." *Id.* He states that "Rule 60(b)(6) expressly authorizes the Court to vacate judgment for 'any other reason justifying relief from the operation of the judgment'" and that his "unique circumstances (as a prisoner who[] cannot otherwise seek necessary medical diagnostic testing or consultation by a specialist) need be strongly considered as to whether good cause exists for [him] to present new evidence following the 1 year mark from final judgment." *Id.*

### B. CCS' Response

CCS makes three arguments why the Court should deny Mr. Gladu's Motion to Vacate Judgment. First, CCS argues that the Court "lacks the authority to amend its judgment once i[t] has been affirmed on appeal." *Defs.' Obj.* at 2 (citing *Elias v. Ford Motor Co.*, 734 F.2d 463, 465 (1st Cir. 1984)). CCS says "[t]he mandate rule . . . does not divest the district court of the authority to address issues on which the appellate court has not expressly or implicitly ruled." *Id.* at 3 (citing *Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 175 (1st Cir. 2013)). However, "whatever was before the

5

appellate court and disposed of by the decree is considered as finally settled and becomes the law of the case." *Id.* (quoting *McMahan Jets, LLC v. X-Air Flight Support, LLC*, No. 2:10CV175KS-MTP, 2012 WL 5606635, at *2 (S.D. Miss. Nov. 15, 2012)). CCS argues "the First Circuit considered *de novo* the record on appeal and affirmed the entry of summary judgment." *Id.* It states the First Circuit also "had before it Mr. Gladu's Motion to Vacate the judgment, and the medical records he claims supported that request." *Id.* CCS asserts that "[t]he First Circuit considered that filing as a request to supplement the evidence, which it denied," and therefore, in CCS' view, the Court may not revisit Mr. Gladu's Motion to Vacate Judgment. *Id.* at 3-4.

Second, CCS argues that "even if this Court was not bound by the First Circuit's mandate, [Mr. Gladu's] Motion to Vacate pursuant to Rule 60(b)(2), (3) is untimely," as "[a] motion for relief under Rule 60(b) brought on grounds of newly discovered evidence or fraud must be brought 'no more than a year after the entry of the judgment or order or the date of the proceeding.'" *Id.* at 4 (quoting FED. R. CIV. P. 60(c)). CCS points out that judgment entered for the Defendants in this case on February 15, 2018, more than a year before Mr. Gladu filed his Motion to Vacate Judgment. *Id.* Additionally, with regard to Mr. Gladu's request for relief under Rule 60(b)(6), CCS asserts that "Rule 60(b)'s catchall provision cannot be used to skirt the timeframes established with respect to relief on the grounds of newly discovered evidence or fraud under 60(b)(1) and (3)." *Id.*

6

Third, CCS states that "[a]ssuming *arguendo* that [Mr. Gladu's] Rule 60(b)(6) filing is not time barred, his motion nevertheless fails because he has not met his heavy burden." *Id.* at 5. According to CCS, Mr. Gladu does not meet his burden because his motion is not timely, he has not established exceptional circumstances or that he can mount a meritorious claim based on his conclusory assertions about being prevented from receiving timely treatment, his allegations do not support a claim for deliberate indifference, and he is already relitigating claims in a separate case. *Id.* at 6.

## III.  LEGAL STANDARD

Rule 60(b) provides that, "on motion and on such terms as are just, a district court may relieve a party from a final judgment." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010) (citing FED. R. CIV. P. 60(b)). The specific grounds for relief under Rule 60 are grouped into six subsections, three of which are relevant here. Rule 60(b)(2) allows the Court to relieve a party from final judgment where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . .." Rule 60(b)(3) allows relief from final judgment where there is "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . .." Rule 60(b)(6) is a catch-all provision that authorizes the district court to grant relief from judgment for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). Additionally, Rule 60(c)(1) states that "[a] motion under Rule 60(b) must be made

7

within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."

"The decision to grant or deny such relief is inherently equitable in nature." *Ungar*, 599 F.3d at 83 (citing *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 25-26 & n.10 (1st Cir. 2006); *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 19-20 (1st Cir. 1992)). "Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'" 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2864 (3d ed. 2012).

## IV. DISCUSSION

### A. The Authority of this Court to Rule on the Motion

The Court rejects CCS' assertion that the First Circuit has ruled on Mr. Gladu's Motion to Vacate Judgment and therefore the Court may not render a decision. While it is true that the First Circuit had the Motion to Vacate Judgment before it, *see Clerk's Second Suppl. Certificate* (ECF No. 564), the Court sees no indication that the First Circuit's ruling that "Plaintiff's motion to supplement the record is denied," *see J.* (ECF No. 566), refers to Mr. Gladu's motion. Rather, it is far more likely that the appellate court's ruling is a denial of Mr. Gladu's July 8, 2019,[3] Motion for Material Evidence Be Considered on Appeal. *Mot. for Material Evid. Be Considered on Appeal*, *Gladu v. Correct Care Solutions*, No. 18-1167 (1st Cir. July 8,

---

[3] Mr. Gladu signed this motion on June 30, 2019, which serves as the filing date based on the prison mailbox rule as discussed above in footnote 2. The Court uses the date the motion was docketed, July 8, 2019, to clarify where the motion is located on the First Circuit docket.

8

2019), Document No. 00117460777. In that motion, Mr. Gladu specifically requested that the First Circuit "consider relevant medical records," including records related to the issues raised in his Motion to Vacate Judgment. *Id.* at 1-2. That motion did not seek relief from judgment under Rule 60(b); rather it sought to supplement the record under Federal Rule of Appellate Procedure 10(e). The Court is skeptical that a First Circuit ruling on a different motion based on a different standard could foreclose the Court's ability to evaluate the merits of Mr. Gladu's Motion to Vacate Judgment.

In support of this point, CCS cites *Elias* for the proposition that the Court "lacks the authority to amend its judgment once i[t] has been affirmed on appeal . . . ." *Defs.' Obj.* at 2. However, "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events. Hence the district judge is not flouting the mandate by acting on [a Rule 60(b)] motion." *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 (1976); *see also Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 41 n.2 (1st Cir. 1979) (stating in dicta that "60(b) motions [may] be filed in the district court without leave from an appellate court that earlier affirmed the decision below").

*Elias* does not contradict this principle. "[T]he denial of . . . a Rule 60(b) motion is not encompassed within an earlier-filed appeal of the underlying judgment. It requires a separately-filed notice of appeal." *Jourjine v. Nokia Corp.*, 312 Fed. App'x 344, 346 (1st Cir. 2009) (citing cases). Even if not the case, "the mandate rule does not apply to 'any issue not expressly or impliedly disposed of on appeal,'" *Diaz*, 741

9

F.3d at 175 (quoting *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997)), and the First Circuit did not indicate in its judgment that it has considered the merits of Mr. Gladu's Motion to Vacate Judgment and made a final determination on it. The Court may rule on Mr. Gladu's Motion to Vacate Judgment.

### B. The Rule 60(b) Motion

The Court next addresses resolution of this motion under Rule 60(b)(2) and (3). Requests for relief under Rule 60(b)(2) and (3) must be made within one year of judgment entering. FED. R. CIV. P. 60(c)(1). Mr. Gladu is not entitled to relief under either of these subsections. "[T]he expiration of the one-year period mandated by [Rule 60] 'is an absolute bar to relief from judgment.'" *Hofland v. Perkins*, No. 1:09-cv-00201-JAW, 2011 WL 2132847, at *1 (D. Me. May 27, 2011) (quoting *United States v. Marin*, 720 F.2d 229, 231 (1st Cir. 1983)).

This leaves Mr. Gladu's request for relief under Rule 60(b)(6). Except in narrow circumstances, the "rule of mutual exclusivity" operates to preclude a grant of relief under Rule 60(b)(6) when any of the first five subsections of the Rule could apply. *Simon v. Navon*, 116 F.3d 1, 5 (1st Cir. 1997). "While motions for relief under Rule 60(b)(6) are not subject to a strict time limit, in this circuit a party invoking that subsection must make a 'showing of extraordinary circumstances suggesting that the party is faultless in the delay.'" *Roosevelt REO PR II Corp. v. Del Llano-Jiménez*, 765 Fed. App'x 459, 461 (1st Cir. 2019) (emphasis omitted) (quoting *Dávila-Álvarez v. Escuela de Medicina Universidad Central Del Caribe*, 257 F.3d 58, 67 (1st Cir. 2001)). Such a showing of extraordinary circumstances is necessary because otherwise Rule

10

60(b)(6) would swallow the first three subsections of the rule, which are stringently time-limited. *See Simon*, 116 F.3d at 5.

Here, based on the timeline Mr. Gladu laid out, the untimeliness of his motion does not appear faultless. Judgment entered on February 15, 2018, which means that for Mr. Gladu's motion to have been timely, he should have filed it by February 15, 2019. By Mr. Gladu's admission, on that date he knew the following:

(1) that the Maine Board of Licensure in Medicine had conducted an inquest into his medical care and treatment;
(2) that based on this inquest, Dr. Clinton had performed follow-up testing and referred him to various experts;
(3) that Dr. Clinton's follow-up testing revealed hyperphosphatemia;
(4) that Dr. Clinton had referred him to urology for a consultation based on his recurrent hematuria;
(5) that the urologist recommended he be evaluated by a nephrologist; and
(6) that Dr. Clinton referred him to a nephrologist shortly thereafter.

*See Pl.'s Mot.* at 1-2.

Each of these pieces of information—individually and certainly collectively—provided Mr. Gladu an opportunity to file for relief under Rule 60(b)(2). However, Mr. Gladu did not file his Motion until almost six months after the February 15, 2019, deadline. Mr. Gladu's lack of diligence suggests that his motion does not present extraordinary circumstances. *See Carter v. United States*, No. 19-1473, 2019 WL 5963389, at *1 (1st Cir. Sept. 10, 2019) (stating that "lack of diligence in pursuing Rule 60(b)(6) relief" supported a finding of no extraordinary circumstances).

Turning to Mr. Gladu's allegations of fraud and deceit by CCS, the Court regards them as conclusory. Beyond Mr. Gladu's bare assertion and the fact that his nephrology consultation did not occur until after the one-year deadline for Rule

11

60(b)(2) relief (which delay could have happened for any number of reasons), the Court has no evidence before it to support these claims. The First Circuit has instructed the Court to ignore such allegations. *See Roosevelt REO*, 765 Fed. App'x at 461-62 (citing *Teamsters*, 953 F.2d at 18).

Furthermore, if Mr. Gladu made similar allegations of fraud in his original Complaint, he would have been required to "state with particularity the circumstances constituting fraud . . .." FED. R. CIV. P. 9(b); *United States ex rel. Kelly v. Novartis Pharm. Corp.*, 827 F.3d 5 (1st Cir. 2016) ("Conclusory allegations and references to 'plans and schemes' are not sufficient" (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996))). The First Circuit has written that Rule 9(b) is "said to be designed to protect defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude . . .." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 229 n.2 (1st Cir. 1980), *superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995*, Pub.L. No. 104–67, 109 Stat. 737. In his motion, Mr. Gladu accuses the CCS Defendants of intentionally delaying his nephrology consult "until after the 1 year deadline for me to introduce new evidence in this matter," which he alleges constitutes a "fraud upon the court." *Pl.'s Mot.* at 3. In the Court's view, this is the type of "lightly made" charge of "wrongdoing involving moral turpitude" that Rule 9(b) prevents: namely, that a health care professional would deliberately deprive a patient of necessary medical treatment to delay his treatment beyond a legal limitations period.

The crux of the problem with Mr. Gladu's motion is that his difficulties with CCS have been episodic and ongoing for years. Mr. Gladu filed this lawsuit on September 23, 2015, and the Complaint alleges events that began on November 16, 2012, over seven years ago. *Compl.* ¶ 18 (ECF No. 1). The historical pattern has been that once the Court resolves what is before it, Mr. Gladu has another dispute with CCS, which then precipitates another set of allegations. Mr. Gladu's 2015 lawsuit was subject to multiple orders of this Court and was finally resolved by judgments of the First Circuit Court of Appeals issued on August 30, 2019. *J. of Ct. of Appeals for the First Circuit* (ECF Nos. 565, 566).

Here, for example, Mr. Gladu's original allegation involved achy joints, specifically in his hips. *Compl.* ¶ 18. Mr. Gladu's August 21, 2019 Rule 60(b) motion alleges problems with the treatment of a nephrology condition. *Pl.'s Mot.* at 1-3. If the Court allowed Mr. Gladu to vacate the judgment on his 2015 Complaint, the allegations would morph over time into something wholly different than the original allegations, despite the federal courts having thoroughly litigated the original allegations through appeal. In short, if Mr. Gladu wishes to press CCS's treatment of his new problems, he should file a new lawsuit, not attempt to append his new complaints to his old dismissed Complaint.[4]

---

[4] The Court is encouraged that on January 9, 2020, Mr. Gladu moved to voluntarily dismiss without prejudice his 2017 Complaint against Correct Care Solutions and other Defendants in *Gladu v. Correct Care Solutions*, No. 2:17-cv-00504-JAW, which raised similar allegations. *Id.*, *Mot. for Voluntary Dismissal* (ECF No. 122). In that motion for voluntary dismissal, Mr. Gladu says that he "wishes to work with the defendants on his medical issues and complaints informally." *Id.* The Court takes that motion as a hopeful sign that Mr. Gladu and his treatment providers will be able to work together, and he will not need to resort to federal court in future.

13

Mr. Gladu has not shown the Court any extraordinary circumstances which would justify an end-run around the clear one-year time limit imposed by Rule 60(c).

V. **CONCLUSION**

The Court DENIES Nicholas Gladu's Motion to Vacate Judgment (ECF No. 563).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of January, 2020